UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROBERT CASTILLO, ANCIL BROWN,
BASHIR MAJID, UPSTAIRS DOWN-
STAIRS OF NEW YORK, INC., dba
TOWNHOUSE OF NEW YORK, EAST
SIDE CLUB, LLC, on their own behalf
and all others similarly situated,

                Plaintiffs,

    -against-

DEREK SMITH LAW GROUP,
PLLC, DEREK T. SMITH, ABRAHAM
MELAMED, DR. YAAKOV
SIEGEL, JOHNMACK COHEN,
and ALEXANDER CABECEIRAS,

            Defendants.
-------------------------------------------------------X

Docket:
Filed: 12/2/23

**JURY DEMAND**

**CLASS AND
COLLECTIVE
ACTION COMPLAINT**

      PLAINTIFFS, by and through their counsel, Thomas D. Shanahan, P.C., on

their behalf and on behalf of all those similarly situated, do hereby complain of

Defendants as follows:

## PARTIES

1. Plaintiff ROBERT CASTILLO ("Castillo") is an individual who works in

    New York County.  Castillo has been affiliated with the East Side Club for

    more than twenty years.

2. Plaintiff ANCIL BROWN ("Brown") is an individual who works in New

    York County.  Brown has been affiliated with the East Side Club for

    twenty years.

3. Plaintiff BASHIR MAJID ("Majid") is an individual and sole shareholder of Upstairs, Downstairs and East Side Club.

4. Plaintiff UPSTAIRS, DOWNSTAIRS OF NEW YORK, INC. dba THE TOWNHOUSE OF NEW YORK ("Townhouse"), is a corporation duly authorized to do business in the State of New York.  Townhouse maintains its principal place of business in New York County.

5. Plaintiff EAST SIDE CLUB, LLC ("East Side Club""), is a corporation duly authorized to do business in the State of New York.  Townhouse maintains its principal place of business in New York County.

6. Plaintiffs bring this action on behalf of their individual and businesses similarly situated, current or past defendants in at least the 177 cases wherein Defendants concealed the fraudulent scheme to enhance the settlement value of their cases.

7. Plaintiffs bring this action on behalf of themselves, and all similarly situated current or former defendants who elect to opt-in to this action pursuant to 18 U.S.C. §1962(c) pursuant to the Racketeer Influenced and Corrupt Organizations Act ('RICO").

8. Plaintiffs seek permission to give notice of this action pursuant to 18 U.S.C. 1962(c) to all Defendants in, at least, the 177 cases wherein the fraudulent schemed complained of herein was effectuated and concealed.

9. Plaintiffs also bring this action pursuant to Federal Rule of Civil Procedure 23 on their behalf; all similarly situated pursuant to New York

Consolidated Laws, General Business Law, GBS §349(a), *et seq.*,

(McKinney's 2022)(the New York State Deceptive Practices Act)

10. Defendant DEREK SMITH ("Smith") is an individual and attorney admitted to practice in New York State.   He is the founder and principal of the DEREK SMITH LAW GROUP, PLLC.

11. Defendant DEREK SMITH LAW GROUP, PLLC ("DSLG"), is a limited liability company formed under the laws of the State of New York on February 8, 2012.

12. Defendant ABRAHAM MELAMED ("Melamed") is an attorney admitted to practice in the State of New York and a "member" of DSLG.  Upon information and belief, Melamed is a "managing member" of DSLG.  He is also the brother-in-law of DEFENDANT DR. YAAKOV SIEGEL.

13. Defendant DR. YAAKOV SIEGEL ("Dr. Siegel") is a psychiatrist, licensed to do practice medicine in New York, New Jersey and Florida.  He was retained by DSLG, Smith and his brother-in-law Melamed, as an expert in approximately 177 cases DSLG filed in the federal courts in a three-year period.

14. Defendant JOHNMACK COHEN ("Cohen") was the DSLG attorney assigned to the <u>Doe v. East Side Club</u> litigation, who conspired with the other Defendants to implement the fraudulent litigation scheme.

15. Defendant ALEXANDER CABECERIRAS ("Cabeceiras") was the DSLG attorney assigned to the <u>Cooper v. Upstairs Downstairs of New York</u>

litigation, who conspired with the other Defendants to implement the fraudulent litigation scheme.

## VENUE

16. Venue is appropriate as all corporate defendants do business in New York County, New York State and the causes of action accrued in New York County.

17. The Southern District is therefore the appropriate venue for this dispute.

## STATUTES

18. Plaintiffs bring this action under 18 U.S.C. §1962(c) pursuant to the Racketeer Influenced and Corrupt Organizations Act ('RICO").

19. Plaintiffs also interpose pendent state claims under the New York Consolidated Laws, General Business Law, GBS §349(a), *et seq.*, (McKinney's 2022).

20. Jurisdiction of this Court is based upon 18 U.S.C. §1962(c), 2 §U.S.C. 1331 and §1337, 28 U.S.C. §1367, 28 U.S.C. §1391.

21. This action is timely pursuant to Federal Rule of Civil Procedure 3 as it was commenced within four years of discovery of the fraud, or four years from the date of Dr. Yaakov Siegel's deposition on December 5, 2019.

### Defendants Conspire to Create Fraudulent Scheme

22. DSLG was retained by various non-party individuals to represent them in alleged employment related discrimination cases.

23. From 2017 to the present, unknown to defendants and their counsel, Smith, Melamed and Dr. Siegel conspired to utilize DSLG as a mechanism to facilitate a fraudulent scheme.

24. The fraudulent scheme took place in New York, New Jersey and Florida and utilized interstate commerce as a mechanism to not only defraud the Plaintiffs and all similarly situated, but utilize interstate commerce to obstruct discovery of the fraud.

25. Among the predicate acts giving rise to individual and enterprise liability, mail fraud, wire fraud, fraud on the United States District Courts, including but not limited to the Southern District of New York, fraudulent business practices that crossed state lines and enterprise liability based upon the active participation of scores of lawyers at DSLG in multiple states including but not limited to New York, New Jersey and Florida, who conspired to facilitate and effectuate the fraudulent scheme. These lawyers include but are not limited to Defendants Cohen and Cabeceiras.

26. In furtherance of this fraudulent scheme, Smith, Melamed, DSLG and Dr. Siegel conspired to have Dr. Siegel issue medical reports for DSLG clients finding substantial psychological distress for DSLG clients almost always without any corroboration via medical documentation or collateral sources.

27. However. Dr. Siegel drafted and issued his reports without reviewing medical reports, contacting third party collateral sources or following other best practices in the psychiatric, medical and legal professions.

28. By and through Dr. Siegel's improper psychiatric reports alleging severe psychiatric damage for DSLG clients with no or nominal injury, cases with **no** value or nuisance value became valuable cases.

29. Smith, Melamed and DSLG steered clients with no or nominal psychiatric damage and/or dubious credibility to Dr. Siegel for evaluation.  By steering these clients to Dr. Siegel and based upon his fraudulent reports, the Defendants enhanced the value of nominal and/or nuisance value cases.

30. In reliance to the reports prepared by co-conspirator Dr. Siegal, Smith, Melamed, Cohen, Cabeceiras and DSLG would demand six and seven figure settlement amounts from Defendants.

31. Dr. Siegal, Smith, Melamed, Cohen, Cabeceiras and DSLG concealed their fraudulent scheme from defendants, defense counsel, the Court and insurance companies.

32. Defendants conspired to implement their fraudulent scheme, at least, 177 times over the course of three years.  *See* <u>Exhibit A</u>.

**Civil RICO Claims as to Collective Class**

33. There are, at least, 175 cases wherein the fraudulent scheme was implemented as to other defendants including the City of New York, MTA, State of New York, and public institutions, for example hospitals.

34. Plaintiffs bring the causes of action on their behalf and on behalf of all similarly situated defendants who were victimized by Defendants' fraudulent scheme.

35. Plaintiffs are representing the interests of all other Defendants in, at the least, the 175 other cases wherein Defendants secretly implemented their fraudulent scheme.

36. Plaintiffs seek to proceed as a collective action regarding the causes of action pursuant to 29 U.S.C. §216(b) on their behalf and on behalf of the following class of persons, companies, or institutions:

> "All Defendants in at least the 177 cases we are aware of wherein Derek Smith, Esq., Abraham Z. Melamed, Esq., the Derek Smith Law Group, PLLC, and Dr. Yaakov Siegel conspired to defraud defendants and cause unnecessary legal fees to be incurred or inflated settlements to be paid due to fraudulent reports of Dr. Siegel with vastly exaggerated alleged damages to the Plaintiffs in the 177 cases."

37. Defendants knew Dr. Yaakov Siegel's favorable flat fee billing to DSLG, lack of review of medical records or collateral sources, failure to verify any information and then submit form reports with substantial damages to almost all 177 clients referred to him by DSLG was a fraudulent scheme and would result in financial damage to all Defendants.

38. Defendants colluded in an attempt to conceal their fraudulent scheme by charging substantially more to depose Dr. Siegel, concealing the index

number and court where the 177 cases were forumed, demanding counsel

for defendants' travel over interstate lines to depose Dr. Siegel far from

where actions were venued, charging for all information required to be

produced, for example the list of 177 cases and other methods yet to be

uncovered.

39. At the least the 175 other cases wherein Defendants secretly implemented

their fraudulent scheme.

40. The civil RICO Collective is readily identifiable and locatable thorough us

of the Defendant's records.  The RICO collective should be notified and

allowed to opt-in to this action, pursuant to 29 U.S.C. §216(b).  Unless the

Court promptly issues such a notice, the RICO Collective, who have been

unlawfully subjected to a conspiracy to defraud them in violation of the

civil RICO statutes, will be unable to secure compensation to which they

are entitled, and which has been unlawfully and fraudulently obtained

from them by Defendants.

### Federal Rules of Civil Procedure Rule 23
### Class Collective Allegations

41. Plaintiffs sue on their behalf and as the class representatives (hereinafter

"Derek Smith Fraud Victim Representatives").  The causes of action are

brought on behalf of Plaintiffs and all those similarly situated, pursuant

to Rule 23, sections (a) and (b), of the Federal Rules of Civil Procedure

(hereinafter the "Derek Smith Fraud Victim Class").

42. The sub-classes are:

    a. All Defendants who settled matters with the Defendants based upon the fraudulent forensic report of Dr. Siegel for an inflated value that would not have been paid but for Dr. Siegel's report.

    b. All Defendants who did not settle matter with the Defendants *even considering* the fraudulent forensic report of Dr. Siegel but incurred substantial legal fees and costs that would not have expended but for Dr. Siegel's report.

    c. All Defendants who went to trial and prevailed against Defendants but were not awarded all costs and or legal fees. gel's report.

39. The persons in the class are so numerous that joinder of all members would be impractical. Although the exact number of people, companies and institutions in the class is unknown and facts upon which the calculation of that number are presently within the sole control of Defendants. Some but not all the class members are identified in the disclosures already made by Dr. Siegal in the <u>Cooper</u> and <u>Does</u> matters and annexed hereto.

40. There are questions of law and fact common to the Derek Smith Fraud Victim Class").

    a. Whether DSLG, Smith and Melamed *accurately* disclosed their personal and business relationship with Dr. Siegel during the course of litigation.

    b. Whether DSLG, Smith and Melamed attempted to conceal their relationship with Dr. Siegel in response to Defendant discovery demands.

    c. Whether Dr. Siegel breached the professional standard of care by and through his retention in at least 177 cases over three years as the DSLG in house expert.

    d. Whether Dr. Siegel breached the professional standard of care by and through his failure to request or review medical records or use collateral sources to confirm alleged damages to DSLG clients.

    e. Whether Dr. Siegel actively conspired with the other Defendants to conceal the fraudulent scheme by charging exorbitant fees to Plaintiffs and Class members, obstructing depositions, and finding damages that were not supported by any objective criteria.

    f. Did Class members pay substantial settlement amounts and incur substantial attorney fees based upon the report of Dr. Siegel and the alleged damages to DSLG clients, without knowledge of the fraudulent scheme.

    g. The proper manner to measure damages sustained by the Derek Smith Fraud Victims Class and the Class Representatives.

41. The Class Representatives fairly and accurately represent and protect the interests of the New York Class and has no interest antagonistic to the class.

42. Plaintiffs' counsel is familiar with the Defendants, has successfully litigated against them in two federal court actions and uncovered the fraudulent scheme.

43. Plaintiffs' counsel is competent in class litigation and the underlying issues in this case as well as the relevant law.

44. A class is superior to other available methods for the fair and efficient adjudication of the controversy as Dr. Siegel *admitted* at his deposition that he almost never reviewed medical records or contacted collateral sources to confirm damages alleged by DSLG clients.

45. The class members have all been equally affected as the Defendants demanded six and seven figure settlements and relief on Dr. Siegel's reports to justify such exorbitant numbers.

46. The Derek Smith Fraud Victims Class may not have been aware of the conspiracy among the Defendants when the decision to settle was made and the amount determined.

47. The New York Class Representative intends to send notice to all members of the Derek Smith Fraud Victims Class to the extent required by Rule 23.

### Defendants Conspire to Implement the Fraudulent Scheme on Plaintiffs to Unjustly Enrich Themselves

48. On behalf of their then clients, DSLG, Cohen and Cabeceiras sued Castillo, Brown, the Townhouse and East Side Club, alleging egregious claims of sexual assault, sexual harassment, and other unlawful discriminatory treatment.

49. DSLG commenced <u>Cooper v. Upstairs, Downstairs of New York, et al</u>, Docket 18-cv-6426, in the Southern District of New York. Cabeceiras was the attorney assigned to implement the fraudulent scheme in <u>Cooper</u> on behalf of DSLG.

50. DSLG commenced <u>Doe v. East Side Club, LLC, et al.</u>, Docket 18-cv-11324, in the Southern District of New York.  Cohen was the attorney assigned to implement the fraudulent scheme in <u>Doe</u> on behalf of DSLG.

51. On behalf of their then clients, DSLG sought $15 million in damages from Townhouse and individual defendants named in that action as well $18 million from East Side Club.

52. Smith and Melamed retained Dr. Siegel on behalf of DSLG and its client in the <u>Cooper</u> litigation.

11

53. Smith and Melamed retained Dr. Siegel on behalf of DSLG and its client in the Doe litigation.

54. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel colluded to maximize the alleged damages to the Plaintiff in the Cooper and Doe matters to enrich themselves based upon their fraudulent scheme.

55. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel knew, or should have known, Dr. Siegel was an obviously conflicted witness, given Melamed is Dr. Siegel's brother-in-law.

56. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of the Cooper and Doe matters by and through Dr. Siegel's failure to review any medical records to confirm the damages self-reported by Mr. Cooper and Mr. Doe.

57. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of purported damages the Cooper and Doe matters by and through Dr. Siegel's failure to contact any collateral sources to confirm the personal and professional background as reported by Mr. Cooper and Mr. Doe.

58. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of purported damages in the Cooper and Doe matters by and through Dr. Siegel's failure to follow even the most basic of techniques which constitute the standard of care when evaluating Mr. Cooper and Mr. Doe.

59. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of purported damages in the Cooper and Doe matters by and

through Dr. Siegel charging counsel for Defendants a substantially larger hourly fee than charged to DSLG as part of the intentional scheme to keep the fraud concealed.  This arrangement was referred to as a "loss leader" by District Court Judge Failla in the <u>Doe</u> matter.

60. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of purported damages in the <u>Cooper</u> and <u>Doe</u> matters by and through Dr. Siegel making it difficult and almost impossible to obtain a list of prior cases in which DSLG had retained Dr. Siegel.

61. Smith, Melamed, Cohen, Cabeceiras and Dr. Siegel conspired to maximize the value of purported damages in the <u>Cooper</u> and <u>Doe</u> matters by and through Dr. Siegel making it difficult and almost impossible to schedule and depose Dr. Siegel in each matter.   In the <u>Cooper</u> matter, DSLG demanded Dr. Siegel's deposition take place in southern New Jersey, three hours from New York City, where the case was forumed and despite Dr. Siegel maintaining an office in Brooklyn.

### Dr. Siegel's Deposition on December 5, 2019

62. After all roadblocks and obstructions were removed by Court orders directing Dr. Siegel to turn-over discovery and appear for his deposition, the deposition finally took place on December 4, 2019 by court order.  The deposition was utilized in both the <u>Cooper</u> and <u>Doe</u> proceedings.  *See* <u>Exhibit B</u>.

63. At the deposition of Dr. Siegel, Plaintiff's were able to slowly peel back the onion and discovered the conspiracy and fraudulent scheme at issue herein.

64. As to the <u>Cooper</u> matter, among the concealed facts uncovered at the

deposition for the first time, despite the extensive, coordinated efforts of

Defendants to obstruct disclosure:

- Dr. Siegel is the "in house" expert for Plaintiff's counsel's law firm, the Derek Smith Group.  Pursuant to subpoena, Dr. Siegel produced a list of cases in which he has been an expert for the Derek Smith Law Group.  According to that list, Dr. Siegel was retained in 42 cases in 2017, 70 cases in 2018 and 22 cases to date in 2019.   The total number of cases Dr. Siegel admits to being retained in by the Derek Smith Law in the last three years is 134![1]

- Dr. Siegel's client agreement executed by the Plaintiff confirms that he was not treated by Dr. Siegel but met with him solely for the purpose of preparing a forensic report for the Derek Smith Law Group.

- In his report, Dr. Siegel confirmed that Plaintiff was referred to him by the Derek Smith Law Group.

- Dr. Siegel did not contact any collateral sources to confirm facts communicated by Plaintiff.

- Not one collateral source was interviewed, and no documents were ever requested or reviewed by Dr. Seigel as part of his "forensic' evaluation of Plaintiff.

- From the time of his termination by the Defendants in January 2017 to the present, Mr. Cooper had never seen any professional for therapy or other treatment arising from the allegations in the Amended Complaint.  However, Defendant Cabeceiras instructed him to see Dr. Joshua Siegel on December 27, 2018. Dr. Siegel authored a report on January 3, 2019, diagnosing Plaintiff with post-traumatic stress disorder or ("PTSD").

- Since his one consultation with Dr. Siegel, Plaintiff has not seen Dr. Siegel.   Moreover, Dr. Siegel did not provide Plaintiff with any recommendations whatsoever regarding professionals he recommended Plaintiff see to be treated for his purported PTSD.

---

[1]An additional 43 cases were later disclosed for a total of 177.  The actual number is still unknown.

- At his one and only consult with Dr. Siegel, Plaintiff either lied, made facts up, or omitted critical facts as confirmed at his deposition. At his deposition, Plaintiff confirmed he did not disclose to Dr. Siegel that he cannot remember the last time he filed his taxes and paid taxes, admitted he failed to pay child support for more than a decade, claimed to have his living expenses paid for by his 73-year-old retired mother, he lives in his 73-year-old mothers house without contributing to any expenses.

- Mr. Cooper has not told his mother he is gay and in a same esex marriage. She believes he lives with a roommate in her attic (or second floor). Moreover, the fact that he was in a same-sex marriage is a secret from all members of his family including his children and mother.

- Mr. Cooper told Dr. Siegel he worked for Lehman Brothers but failed to mention he allegedly worked there twenty-five years ago and there are no records of his employment.

- He failed to disclose to Dr. Siegel that he has not held a job that pays him in a traceable fashion for at least the last decade.

- He also claimed that there was no stress whatsoever in his marriage. Plaintiff also claims his husband and he never discussed any of the issues raised in this lawsuit and that his husband never witnessed any of Plaintiffs' alleged emotional distress.

- Plaintiff also failed to disclose to Dr. Siegel that he was allegedly hit by a car crossing a street in Jamaica, Queens, alleging injuries so sever he sought treatment at Jamaica Hospital and has a personal injury attorney retained to represent him. Plaintiff omitted this information from his responses to Interrogatories as well.[2]

65. At trial in the <u>Cooper</u> matter, Dr. Siegel testified, *see* <u>Exhibit C</u>, as relevant:

---

[2]At his deposition Plaintiff testified that he was taken to Jamaica Hospital by ambulance. However, documents subsequently obtained from personal injury counsel indicated he went to Jamaica Hospital the next day on his own. Plaintiff lies about almost everything to try and present the best facts possible as he perceives them at that moment. Truth means nothing to the Plaintiff and Dr. Siegel never bothered to try to confirm any of the facts Mr. Cooper told him.

- He is the "in-house"[3] psychiatric expert for DSLG where his brother-in-law is a managing partner.

- He has been retained by DSLG in more than 170 cases in three years.

- He almost never reviewed medical records or other third-party evidence to confirm findings in his reports in almost all the DSLG cases.

66. As to the <u>Doe</u> matter, substantially similar misconduct occurred as addressed by Judge Failla in her Decision and Order dated July 1, 2020.

67. Defendant Cohen withdrew the report of Dr. Siegel and struck him the DSLG trial witness list in the <u>Doe</u> matter on the eve of trial.

68. In the <u>Cooper</u> matter, Defendants demanded millions of dollars, rejected a $50,000.00 Rule 68 Offer of Judgment almost one-year prior to trial and proceeded to a jury trial.  The jury awarded $6,000.00 from one Defendant on one charge. The Jury found not-guilty on all the other charges for three remaining defendants.   But for the fraudulent scheme of Defendants to enhance the value of the case through Dr. Siegal's fraudulent report, the <u>Cooper</u> matter would have settled much earlier for a nominal amount.

69. In the <u>Doe</u> matter, Defendants demanded $18 million at filing and $15 million in their pre-trial brief.  Defendants withdrew the complaint on the eve of jury selection as their extensive fraud was uncovered.

70. Defendant DSLG was sanctioned by the District Court Judge in <u>Doe</u>.  See <u>Exhibits D, E</u>.

---

[3]DSLG takes issue with my characterization of Dr. Siegel as its in-house expert.  He is described this way given he was retained by the firm in 170+ cases in three years.

71. The District Court Judge in <u>Doe</u> specifically noted in her sanctions decision that had proper disclosures been made by Defendants, Doe would have likely concluded much more quickly and for a nominal amount.

72. But for the fraudulent scheme of Defendants to enhance the value of the case through Dr. Siegal's fraudulent report, the <u>Doe</u> matter would have settled much earlier for a nominal amount.

73. Plaintiffs have suffered actual and compensatory damages as a direct and proximate result of the fraudulent scheme of Defendants in <u>Cooper</u> and <u>Doe</u>.

## AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFF AND THE DEREK SMITH FRAUD VICTIMS

74. Plaintiff on their behalf and all members of the Derek Smith Fraud Victims Class reallege and incorporate fully by reference all prior allegations.

75. Plaintiff and all Class Members were Defendants in cases commenced against them wherein Dr. Siegal was retained as a purported neutral forensic expert.

76. Plaintiff and all Class Members were subjected to the Defendants conspiracy to perpetrate the fraudulent scheme alleged in detail herein.

77. Defendants have violated 18 U.S.C. §1962(c) pursuant to the Racketeer Influenced and Corrupt Organizations Act ('RICO") and New York

Consolidated Laws, General Business Law, GBS §349(a), *et seq.*, (McKinney's 2022), which prohibits fraudulent and/or receptive practices.

78. The Class Representatives and Class have been damaged in an amount presently unknown and to be determined in discovery.

79. Plaintiffs on their own behalf and on behalf of the Class seek recovery of actual damages, treble damages, liquidated damages, compensatory damages, attorney fees and costs of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs on their own behalf and all others similarly situated seek the following relief:

a. The Court certify the Class and that Plaintiffs be allowed to give notice of this action, or that the issue such notice, to all persons, corporations or institutions named as Defendants in at least the 177 cases during a three-year period wherein DSLG conspired with Dr. Siegel in furtherance of the fraudulent scheme alleged herein. Such notice shall inform them that this action has been commenced, the nature of the allegations and their right to join this lawsuit if they believe they have been damaged.

b. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c. Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

d. Damages as permitted under 18 U.S.C. §1962(c) and GBS §349(a), *et seq.*,
which prohibits fraudulent and/or deceptive practices including but not
limited to recovery of actual damages, treble damages, liquidated
damages, compensatory damages, attorney fees and costs of this action.

e. Issuance of a declaratory judgment that the practices complained of in
this action are unlawful under both   18 U.S.C. §1962(c) and GBS §349(a),
*et seq.*,

f. Attorney fees and costs of this action;

g. Such other, different, and further relief as is just, equitable and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues alleged herein to be tried.

Dated:        New York, New York
              December 2, 2023

                    By:_____
                    Thomas D. Shanahan, Esq.
                    Thomas D. Shanahan, P.C.
                    535 Fifth Avenue, 25th Floor
                    New York, New York 10017
                    Phone (212) 867-1100, x11

**On the Complaint:**

Luna Stewart
Paralegal
Thomas D. Shanahan,  P.C.

**Client Verification**

Ancil Brown, Robert Castillo on their own behalf and on behalf of East Side Club, LLC,

verify the facts as plead in the complaint are true and accurate based upon their personal

knowledge.  For those facts alleged upon information and belief, they believe those to be true.

Dated: New York, New York
November 30, 2023

By: _____
Ancil Brown
Personally and as Agent of
East Side Club, LLC

By: _____
Robert Castillo
Personally and as Agent of
East Side Club, LLC

SWORN TO BEFORE ME THIS
30ᵗʰ DAY OF NOVEMBER 2023

By: _____

```
Thomas D. Shanahan
Notary Public - N.Y. State
No: 02SH633024
Expires: Sept. 14, 2027
Qualified in New York County
```

SWORN TO BEFORE ME THIS
30ᵗʰ DAY OF NOVEMBER 2023

By: _____

```
Thomas D. Shanahan
Notary Public - N.Y. State
No: 02SH633024
Expires: Sept. 14, 2027
Qualified in New York County
```

**On the Complaint:**

Luna Stewart
Paralegal
Thomas D. Shanahan, P.C.

## CONSENT TO JOIN COLLECTIVE ACTION
## CIVIL RICO ACTION - 18 U.S.C. 1962 (b) and 1962 (c)

I, Ancil Brown, individually and as an authorized agent of both Upstairs Downstairs of New York, LLC, and East Side Club, LLC, and consent to be a party in a collective action brought in the United States District Court for the Southern District of New York captioned Castillo v. Derek Smith Law Group, PLLC, et al., to recover damages caused by Defendants conspiring to perpetrate a fraud and deceptive business practices on my and my businesses as alleged in this complaint. I hereby authorize Thomas D. Shanahan, P.C., to pursue any claims I may have including such litigation as may be necessary, and I hereby consent and agree to opt in and become a Plaintiff here3in and to be bound by any settlement of this action and adjudication by the Court.

Dated:      New York, New York
            December 2, 2023          By

I, Robert Castillo, individually and as an authorized agent of both Upstairs Downstairs of New York, LLC, and East Side Club, LLC, and consent to be a party in a collective action brought in the United States District Court for the Southern District of New York captioned Castillo v. Derek Smith Law Group, PLLC, et al., to recover damages caused by Defendants conspiring to perpetrate a fraud and deceptive business practices on my and my businesses as alleged in this complaint. I hereby authorize Thomas D. Shanahan, P.C., to pursue any claims I may have including such litigation as may be necessary, and I hereby consent and agree to opt in and become a Plaintiff here3in and to be bound by any settlement of this action and adjudication by the Court.

Dated:      New York, New York
            December 2, 2023          By:

On December 2, 2023, before me came Ancil Brown and Robert Castillo, whom I represent as counsel, and signed this consent.

Dated:      New York, New York
            December 2, 2023          By:

Thomas D. Shanahan
Notary Public - N.Y. State
No: 02SH633024
Expires: Sept. 14, 20 27
Qualified in New York County

18